Nos. 24-1064, 24-1065

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA
SECURITY BREACH LITIGATION

**REPLY BRIEF OF DEFENDANT-APPELLANT
MARRIOTT INTERNATIONAL, INC. (PUBLIC)**

*On Appeal from the United States District Court
for the District of Maryland, MDL No. 19-md-2879 (Bailey, J.)*

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
Emanuel Powell III
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................. 3

I.   The Parties' Class-Action Waiver Bars Certification ............................ 3

    A.   Marriott Did Not Disavow Its Class-Action Waiver
        By Agreeing To An MDL .................................................... 4

    B.   Marriott Did Not Indirectly Repudiate The Class
        Waiver. ................................................................................ 7

    C.   Marriott Did Not And Could Not Intentionally
        Relinquish The SPG Terms' Class-Action Waiver
        Before Plaintiffs Put It At Issue .................................... 10

II.  Plaintiffs' Rule 23 And Unconscionability Arguments Are
    Wrong. .................................................................................................... 17

III. Certification Violates Rule 23's Ascertainability
    Requirement .......................................................................................... 18

    A.   Marriott's Database Does Not Contain The
        Information Required To Ascertain The Class. ............ 19

    B.   Affidavits Cannot Overcome A Lack Of Objective
        Proof Regarding Non-Reimbursement .......................... 20

    C.   Reimbursement Goes To Standing, So Must Be
        Proven At Trial ................................................................ 23

IV.  Certification Violates *Comcast*. ...................................................... 26

    A.   To Satisfy Rule 23, Plaintiffs Must Prove That Their
        Model Is Capable Of Measuring Damages On A
        Classwide Basis. .............................................................. 27

B.     Plaintiffs Cannot Salvage Their Overpayment Assumption.............................................................30

CONCLUSION ....................................................................32

# TABLE OF AUTHORITIES

CASES

*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010) .................................................................................15

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ...............................................................................18

*In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018) ..........20, 24, 26

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) .............................................25

*Betz v. St. Joseph's/Candler Health System, Inc.*, 630 F.Supp.3d 734 (D.S.C. 2022) ......................................................................25

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015)...................................30, 31

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011)...............................................4, 5

*Cernelle v. Graminex, L.L.C.*, 2022 WL 2759867 (6th Cir. July 14, 2022) .........................................................................24

*Christian v. Christian*, 365 N.E.2d 849 (N.Y. 1977).........................................9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .........................................26, 29

*Convergys Corp. v. National Labor Relations Board*, 866 F.3d 635 (5th Cir. 2017) ....................................................................16

*Darnell v. Wyndham Capital Mortgage, Inc.*, 2021 WL 1124792 (W.D.N.C. Mar. 24, 2021) ..........................................................25

*Degidio v. Crazy Horse Saloon & Restaurant Inc.*, 880 F.3d 135 (4th Cir. 2018) ....................................................................14

*DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342 (S.D. Fla. 2017) ....................................................................16

*Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023) ................................24

*Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) .................................................................................25

*Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007) ..............................8, 10

*EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ...................19, 20

*Evans v. Brigham Young University*, 2022 WL 596862 (D. Utah Feb. 28, 2022), *aff'd*, 2023 WL 3262012 (10th Cir. May 5, 2023) ........................................................................22

*Financial Technologies International, Inc. v. Smith*, 247 F.Supp.2d 397 (S.D.N.Y. 2002) ...........................................9

*Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006) .................................................................20

*Freeman v. Capital One Bank*, 2008 WL 2661990 (E.D. Va. July 3, 2008) ................................................................17

*Freeman v. Quicken Loans, Inc.*, 566 U.S. 624 (2012) ...................5

*Garcia De Leon v. New York University*, 2022 WL 2237452 (S.D.N.Y. June 22, 2022) ..................................................22

*GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221 (E.D. Va. 2020) ..........................................9

*Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) ...............21

*Hutton v. National Board of Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018) .............................................24-25

*Jefpaul Garage Corp. v. Presbyterian Hospital in City of New York*, 462 N.E.2d 1176 (N.Y. 1984) ....................................9

*Kahru v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945 (11th Cir. 2015) .................................................................20

*Kimbrel v. ABB, Inc.*, 2019 WL 4861168 (E.D.N.C. Oct. 1, 2019) .................25

*Knopick v. Jayco, Inc.*, 895 F.3d 525 (7th Cir. 2018) ...................10

iv

*Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490 (E.D. Pa. May 27, 2016)................................................................17

*L-3 Communications Corp. v. Serco, Inc.*, 673 F. App'x 284 (4th Cir. 2016) ................................................................24

*Laver v. Credit Suisse Securities (USA), LLC*, 976 F.3d 841 (9th Cir. 2020) ................................................................15

*Lindsay v. Carnival Corp.*, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ................................................................16

*In re Marriott International, Inc.*, 78 F.4th 677 (4th Cir. 2023)............3, 6, 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ................................................................4

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ................................14

*NVR, Inc. v. Just Temps, NC.*, 31 F. App'x 805 (4th Cir. 2002) ...................10

*In re Rail Freight Fuel Surcharge Antitrust Litigation-MDL No. 1869*, 725 F.3d 244 (D.C. Cir. 2013) ........................................32

*Schultz v. Emory University*, 2023 WL 4030184 (N.D. Ga. June 15, 2023) ................................................................22

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013).................30

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).................................23, 24

*Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792 (2021).............25, 26

*Whitaker v. Monroe Staffing Services, LLC*, 42 F.4th 200 (4th Cir. 2022) ................................................................5

*Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075 (N.D. Cal. 2011) ................................................................20

*In re Zetia (Ezetimibe) Antitrust Litigation*, 7 F.4th 227 (4th Cir. 2021) ................................................................27

*Zinkand v. Brown*, 478 F.3d 634 (4th Cir. 2007) ...............................................9

OTHER AUTHORITIES

2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 6:43 (6th ed. updated Nov. 2023)....................................................7

# INTRODUCTION

Every single named plaintiff and putative class member in this case agreed to resolve their disputes "without any class action." Marriott consistently asserted—in its answer and during discovery—that if plaintiffs sought to certify classes based on the SPG Terms, Marriott would invoke that contract's class-action waiver. Sure enough, when plaintiffs moved to certify classes based on the SPG Terms (rather than the 30 other contracts they put at issue), Marriott opposed certification with the SPG Terms' class-action waiver. Plaintiffs' contractual commitment not to pursue class relief requires reversal of the certification order.

Plaintiffs' response finds no support in the law or the record. Their primary contention is that Marriott "waived" the class-action waiver. They claim this occurred when Marriott "breached" the SPG Terms on day one by agreeing to an MDL (sited in Maryland, not New York) and a bellwether process (that included non-New York claims).

Marriott breached nothing. The SPG Terms prohibit "class action[s]," not MDLs. Plaintiffs ignore the provision's plain text and make its key language prohibiting class actions superfluous. As for venue, an unbroken line of precedent confirms that agreeing to an MDL does not waive a choice-

of-venue provision. And all parties expressly agreed to reserve choice of law at the outset of the bellwether process. Marriott made all these points in its opening brief; plaintiffs have no response to them.

Plaintiffs' waiver theory also ignores this case's chronology. Marriott agreed to an MDL and bellwether process back in 2019. In early 2021, plaintiffs were still insisting their class claims could rely upon any one of 31 different contracts, which contain different and competing choice-of-law, venue, and class-action waiver provisions. Marriott could not have intentionally disavowed any "known" right to invoke those provisions before plaintiffs revealed—in their July 2021 class certification papers—that they would rely on the SPG Terms. Plaintiffs identify no case that has adopted their retro-repudiation theory. And no defendant in this Circuit could agree to an MDL or a bellwether process were this Court to break from its siblings and embrace such a rule.

Plaintiffs barely defend the district court's alternative, equally lawless grounds for nullifying the parties' class-action waiver. The class-action waiver dooms class certification, as do plaintiffs' failures to satisfy Rule 23's ascertainability and predominance requirements. The district court's recertification order must be reversed.

# ARGUMENT

## I. The Parties' Class-Action Waiver Bars Certification.

As this Court recognized in the prior appeal, "[c]ourts consistently resolve the import of class waivers at the certification stage" because "certification is the key moment in class-action litigation: It is the 'sharp line of demarcation' between 'an individual action seeking to become a class action and an actual class action.'" *In re Marriott Int'l, Inc.*, 78 F.4th 677, 686 (4th Cir. 2023) (quoting *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1304 (4th Cir. 1978)). Because Marriott "raised its class-waiver defense in its answer to the plaintiffs' complaint and then again at class certification," it was "not obvious" what more Marriott needed to do. *Id.* at 687.

Facing a class-action waiver that Marriott timely invoked, plaintiffs offer three responses: (1) that the class-action waiver is something else entirely: an agreement to litigate "individually," without any efficiency-promoting tools, including MDLs; (2) that Marriott repudiated the SPG Terms' class-action waiver indirectly by supposedly waiving that contract's venue and choice-of-law provisions; and (3) that Marriott intentionally disavowed the class-action waiver before plaintiffs put it at issue. Each argument fails.

**A. Marriott Did Not Disavow Its Class-Action Waiver By Agreeing To An MDL.**

Plaintiffs' first argument flouts the SPG Terms' plain text. The contract provides: "Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action[.]" JA1466. It does not state that disputes must be "handled individually without any *MDLs*." Nor does it impose an open-ended requirement that disputes be absolutely "handled individually, *including* without any class action." Rather, the SPG Terms define "handled individually" to mean "without any class action."

Plaintiffs' reading violates the "cardinal principle of contract construction": to "give effect to all its provisions." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). In particular, it is improper to "give[] independent meaning to [an] intervening [term] … only at the expense of rendering the remainder of the provision superfluous." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011). That is precisely what plaintiffs ask this Court to do. If, as plaintiffs suggest, "handled individually" means handled without *any* efficiency-promoting litigation process, including MDLs, then that prohibition would already cover class actions—thus making the phrase "without any class action" superfluous. Conversely,

Marriott's more natural construction gives effect to every word, as the law requires: It reads "without any class action" to define what "handled individually" means.[1]

Plaintiffs do not respond to that basic point. Instead, they insist Marriott could have written the provision differently to provide that disputes must be "handled … without any class action." Appellees' Br. 31, 39. But drafters always have multiple routes to express their meaning, and "the rule against [superfluity] does not prescribe that a passage which could have been more terse does not mean what it says." *Bruesewitz*, 562 U.S. at 236. So long as every term does work, even if fewer words could express the same point, there is no superfluity problem. *Id.*; *see Freeman v. Quicken Loans, Inc.*, 566 U.S. 624 (2012).[2] Marriott's interpretation passes that blackletter test; plaintiffs' flunks it.

---

[1] Nor does construing the contract lie "squarely within the purview of the district court." Appellees' Br. 30. This Court reviews "the interpretation of the contract de novo." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209 (4th Cir. 2022).

[2] Plaintiffs emphasize that the provision applies to "any dispute," Appellees' Br. 31, but they again ignore the sentence's end, which defines the prohibited litigation mechanism for "any dispute" as "class action."

Plaintiffs' interpretation is also belied by *their own* consistent treatment of the provision as a class-action waiver (not an MDL waiver). Plaintiffs affirmatively described it that way in their briefing before the district court and this Court. JA1479-1483; Appellees' Br. 4, 10-11, 16-17, 22, 28, 31-33, 35, Case No. 22-1745. Both courts, too, treated it as such addressing the initial certification decision. JA1249-1250; *Marriott*, 78 F.4th at 680-81, 685-88. In fact, in the class proceedings in front of Judge Grimm, plaintiffs never hinted that the class-action waiver was incompatible with MDLs. *See* JA1479-1483.

Even if the contract's text could be read as a freestanding promise to litigate "individually" (beyond "without any class action"), participating in an MDL would not waive that provision. Plaintiffs concede that MDLs are consistent with "individual" litigation because each underlying action retains its individual character. *See* Marriott Br. 25-26. Likewise, no plaintiff litigates bellwether claims on behalf of any other (*i.e.*, non-"individually"). *See* Marriott Br. 26-27.

Plaintiffs offer only a short, citation-free footnote asserting that class actions and MDLs "differ[] as to form of aggregation, not individual treatment." Appellees' Br. 40 n.17. While it is true that both MDLs and class

actions achieve efficiencies, MDLs do so by temporarily joining individual cases to coordinate pre-trial proceedings, without displacing individualized merits resolution. Class actions, by contrast, generate a single preclusive outcome for all. 2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 6:43 (6th ed. updated Nov. 2023) (defining MDLs as "aggregate litigation" and class actions as "representative litigation"). That is, the temporary aggregation in MDLs is not non-"individual."

Moreover, were plaintiffs right that "handled individually" enshrined a promise distinct from "without any class action," a putative waiver of the former term (by MDL or otherwise) *still* would not nullify the class-action waiver given the SPG Terms' no-waiver and severability clauses. *See infra* 9. Because Marriott timely invoked the class-action waiver at class certification, Marriott did not waive that language.

## B.    Marriott Did Not Indirectly Repudiate The Class Waiver.

Plaintiffs offer an equally meritless indirect waiver theory—waiver-by-venue and -choice-of-law.

On venue, plaintiffs say that by agreeing to transfer the underlying cases for temporary MDL treatment in a single judicial forum, Marriott waived claims regarding venue in the underlying actions. That is not how

MDLs work. Plaintiffs offer no response to the fact that MDLs do not alter venue in the underlying actions. Venue is determined once pretrial proceedings in the MDL district have concluded and the underlying cases are transferred back for merits resolution. *See* Marriott Br. 28-29.

Plaintiffs' choice-of-law arguments, meanwhile, misstate the record. The parties *agreed* they were not waiving any choice-of-law arguments in selecting bellwether claims (as plaintiffs acknowledge in a footnote in the background section of their brief but never respond to as an argument). Appellees' Br. 10 n.3. Plaintiffs do not explain why that mutual reservation of rights should be ineffective—let alone how it could constitute "intentional relinquishment," as waiver requires. *Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir. 2007); *see* Marriott Br. 20-21.

For the same reasons, plaintiffs' "judicial estoppel" argument goes nowhere. Appellees' Br. 42-43. As discussed, there is nothing "inconsistent" about an MDL's venue or parties' reservation of choice-of-law arguments in that MDL, and an underlying contract's provisions governing the same. Likewise, agreeing to test claims and defenses in a non-binding bellwether proceeding does not admit the merits of those claims or the application of

those laws—it agrees to test those claims or the application of those laws against available defenses. *See* Marriott Br. 26-27.[3]

But even if Marriott had waived some other provision of the SPG Terms (it did not), the SPG Terms contain severability and no-waiver clauses that foreclose plaintiffs' venue and choice-of-law theories. *See* Marriott Br. 27-28; *e.g.*, *Christian v. Christian*, 365 N.E.2d 849, 856 (N.Y. 1977); *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of N.Y.*, 462 N.E.2d 1176, 1178 (N.Y. 1984); *Fin. Techs. Int'l, Inc. v. Smith*, 247 F.Supp.2d 397, 407 (S.D.N.Y. 2002). Plaintiffs' lone response—again without citation—is that the severability provision does not apply to clauses in the same paragraph. Appellees' Br. 35 n.15. But the severability provision does not contain that limitation. Plaintiffs cite no authority for their atextual reading, and they ignore case law from courts in this Circuit holding the opposite. *Compare* Appellees' Br. 35 n.15, *with, e.g.*, *GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221, 228 (E.D. Va. 2020).

---

[3] Plus, as plaintiffs' case emphasizes, there can be no judicial estoppel absent bad faith. *See Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Plaintiffs make no such showing.

The law supports Marriott for good reason. Fundamentally, waiver protects "the security and predictability that the law provides for parties to a written contract." *Knopick v. Jayco, Inc.*, 895 F.3d 525, 530 (7th Cir. 2018). No reasonable party would believe that because its counterparty waived choice of law or venue, it was also intentionally disavowing a class-action waiver; these promises are not substantively related. *See, e.g., NVR, Inc. v. Just Temps, NC.*, 31 F. App'x 805, 808 (4th Cir. 2002) (rejecting argument that because "[appellant] waived the applicability of certain provisions of the contract …, it necessarily follows that [appellant] waived the applicability of [other] provisions"); *Kidd*, 501 F.3d at 354 (requiring "clear evidence to the contrary" before ruling that "valuable rights have been conceded").

### C. Marriott Did Not And Could Not Intentionally Relinquish The SPG Terms' Class-Action Waiver Before Plaintiffs Put It At Issue.

Plaintiffs' waiver argument further fails because, regardless of how one reads the SPG Terms, Marriott could not knowingly act inconsistently with those Terms before plaintiffs declared their reliance on them. That is, Marriott could not "intentional[ly] relinquish[]" a "known right" before plaintiffs revealed at class certification that they were relying on the SPG Terms to define their classes. *Kidd*, 501 F.3d at 354.

1. A reader of plaintiffs' brief could be forgiven for thinking that the SPG Terms were the only contract at issue in the dozens of actions filed against Marriott across the country. That is not true.

Marriott agreed to the MDL and bellwether process in 2019. JA152; JA408. Plaintiffs would have this Court hold that Marriott waived its rights under the SPG Terms at that time, but plaintiffs were still *years* away from defining their classes based on the SPG Terms. During discovery in 2020 and early 2021, when Marriott asked plaintiffs to "[i]dentify every contract … you intend to rely on" for class certification, JA1061, plaintiffs identified *31 contracts* containing differing and sometimes competing choice-of-law, venue, and class-waiver provisions, JA1726-1746. It was only in their July 2021 class certification motion that plaintiffs alighted on the SPG Terms as the basis for their contract classes. Dkt. 858; JA1389-1390.

On pages 9-11 of their brief, plaintiffs catalog the acts Marriott took supposedly in violation of the SPG Terms. With one exception, every single one predates plaintiffs' 2021 decision to define their contract classes using the SPG Terms. The sole exception? Marriott's *invocation* of the class-action waiver in opposing certification, which plaintiffs claim should be treated as a disavowal of that provision because Marriott did not also raise choice of

law (which the parties had reserved) or venue (which is not altered by an MDL). It is telling that the only ostensibly inconsistent act plaintiffs can point to at a time when waiver was even possible is Marriott's affirmative invocation of the class-action waiver.

Plaintiffs offer no response except to observe in a footnote that their complaint referenced the SPG Terms. Appellees' Br. 41 n.18. No one disputes that. But the complaint identified multiple contracts, *see* JA528-531, and by discovery, plaintiffs' list had ballooned to 31 contracts as possible bases for contract classes. Marriott did not sacrifice its class-action waiver by actions that predated the SPG Terms' relevance.

2. Plaintiffs also leave the reader with the distinct impression—though they do not come out and say it—that plaintiffs were somehow surprised by Marriott's invocation of the SPG Terms' class waiver at certification. Plaintiffs point to the "31 months" between the initiation of the MDL and Marriott's brief opposing class certification. Appellees' Br. 9, 32. And they chide Marriott for invoking a class-waiver defense in its answer without citing the "specific" SPG class-action waiver. Appellees' Br. 32.

There is a reason plaintiffs do not actually say they were surprised: Marriott invoked the waiver, repeatedly. Marriott raised a class-waiver

defense in its answers, JA957, JA1057—"operative" pleadings, contra Appellees' Br. 42. And just as plaintiffs had not yet specified which contract was at issue, so, too, Marriott had no obligation to cite the specific SPG Terms at that point. In discovery, Marriott asked plaintiffs what contracts they were relying on, JA1061; and plaintiffs asked Marriott for the basis of Marriott's preserved class-waiver defense, JA1064. In response, plaintiffs refused to narrow the universe of contracts, JA1726-1746; Marriott duly identified the SPG Terms (and other contracts containing class waivers) as the basis for its class-waiver defense, JA1066. Marriott was thus clear that, whenever plaintiffs settled on the relevant contract, to the extent they proceeded with classes defined by the SPG Terms, Marriott would invoke that contract's class waiver. Plaintiffs cannot claim surprise.

Rather, buyers' remorse drives plaintiffs' position. In the lead-up to class certification, the volume of contracts (and differing contractual relationships between prospective class members and Marriott) posed typicality, adequacy, and predominance problems. *See* JA1248-1250, JA1252. So plaintiffs chose the contract they believed gave them the best shot to obtain certification: the SPG Terms, which incorporate by reference the Privacy Statement (underlying plaintiffs' breach-of-contract claims) and

"constitute the entire agreement between Starwood and SPG Members" (*i.e.*, plaintiffs). JA1447, JA1466; *see* JA1405, JA1410. The SPG Terms also maximized the class size and dollar value of this litigation. But the contract came with a promised downside: a class-action waiver that plaintiffs could defeat only by arguing that the term did not apply to their claims (a point they previously pressed but have now abandoned) or was unconscionable (a point they now barely defend, *see infra* 17-18). Plaintiffs have no one to blame but themselves for seeking to certify classes subject to a class-action waiver that Marriott had asserted and preserved at every turn.

3. Plaintiffs attempt to bolster their waiver argument by invoking arbitration cases, like *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Those cases are irrelevant. *Any* litigation in a judicial forum risks waiver of an arbitration provision because litigation is inherently inconsistent with arbitration. *See, e.g., Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 142 (4th Cir. 2018); *cf. Morgan*, 596 U.S. at 414-15. But litigation is not inconsistent with a class-action waiver; certification is. As this Court put it, "certification is the key moment in class-action litigation." *Marriott*, 78 F.4th at 686. Marriott timely invoked the class waiver by raising it at certification. While a party could "intentionally relinquish" a "known" right to arbitrate

by acquiescing to litigation in a judicial forum, the same is not true as to a class-action waiver.

Equally irrelevant are plaintiffs' cases holding that one party's breach excuses a counterparty's performance. *See* Appellees' Br. 33-34. As explained, Marriott did not breach any provision of the SPG Terms. Regardless, plaintiffs' cases are about parties breaching *substantive* commitments, and none of them excuse compliance with procedural provisions. On the contrary, case after case enforces class-action waivers, arbitration agreements, and forum-selection clauses in breach-of-contract actions. *See, e.g., Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 646 (4th Cir. 2010) (forum-selection clause); *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 844, 846-47 (9th Cir. 2020) (class-action waiver and arbitration agreement). Were it otherwise, arbitration clauses or other provisions governing dispute resolution could *never* be invoked by a defendant in a contract-breach case. That is not the law.

4. Finally, this Court should recognize the sweeping consequences of plaintiffs' position. Plaintiffs say finding waiver would not discourage MDLs because the district court's decision turned on special factors. Appellees' Br. 38-39. The record proves otherwise. Like almost every MDL, this case

involved claims under myriad contracts with differing venue, choice-of-law, and class-waiver language. JA528-531 (operative complaint invoking, *inter alia*, the Marriott Rewards Terms); JA1601 (Marriott Rewards Terms containing Maryland choice-of-law and venue provisions). If, as the district court held and plaintiffs urge, merely agreeing to an MDL or bellwether claims—while invoking a class-waiver defense and expressly reserving choice of law—constitutes waiver, no defendant could ever say yes.

Not to worry, plaintiffs insist, "[g]oing forward, a company drafting a class action waiver can easily avoid" this result by excluding any reference to proceeding "individually." Appellees' Br. 39. But similar class-waiver language is ubiquitous. *E.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 116 (2d Cir. 2012) (disputes "handled just between the named parties, and not on any representative or class basis"); *Convergys Corp. v. Nat'l Lab. Rels. Bd.*, 866 F.3d 635, 636 (5th Cir. 2017) (party must "pursue any claim … as an individual, and [ ] not … as a member of a class"); *Lindsay v. Carnival Corp.*, 2021 WL 2682566, at *1 (W.D. Wash. June 30, 2021) (disputes "shall be litigated by you individually and not as a member of any class"); *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342, 1344 (S.D. Fla. 2017) (litigation must be "individually and not as a member of any class or as part

of a class or representative action"); *Korea Wk., Inc. v. Got Cap., LLC*, 2016 WL 3049490, at *3 (E.D. Pa. May 27, 2016) ("dispute resolution [must be] on an individual basis, … waiv[ing] any right to assert any claims … as a representative or member in any class or representative action"); *Freeman v. Cap. One Bank*, 2008 WL 2661990, at *1, *3 (E.D. Va. July 3, 2008) (disputes "must proceed on an individual basis, even if the Claim has been asserted in a court as a class action"). An affirmance from this Court would upend the settled expectations of contracting parties across the country.

## II.   Plaintiffs' Rule 23 And Unconscionability Arguments Are Wrong.

Plaintiffs barely defend the district court's alternative holdings that the parties' class-action waiver violates the Federal Rules of Civil Procedure and is unconscionable under New York law. *See* Appellees' Br. 43-44.

On the Federal Rules, plaintiffs decline to defend the district court's unprecedented holding that Rule 23 bars class-action waivers. *See* Marriott Br. 31-34. Instead, plaintiffs rely on Rule 42, which empowers courts to take steps to "consolidate" actions "involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a); *see* Appellees' Br. 43. But that does not authorize courts to force parties to proceed via class action where they have not so moved, particularly where they have contracted to the contrary. Plaintiffs ignore

the Supreme Court's recognition that it would violate the Rules Enabling Act to override the parties' agreement not to pursue class relief. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Plaintiffs alternatively urge this Circuit to be the first to invalidate class waivers unaccompanied by arbitration provisions. Appellees' Br. 45. Plaintiffs ask this Court to ignore the clear weight of authority approving and enforcing such provisions. *See* Marriott Br. 32-33.

On unconscionability, plaintiffs do not cite a single New York case finding either *procedural* or *substantive* unconscionability—let alone *both*— in any comparable circumstance. Plaintiffs' precedents involve contracts that consumers could not understand; or infinite arbitration agreements that covered claims between the parties having no relationship whatsoever to the contract; or contracts mandating application of the law of foreign territories. *See* Appellees' Br. 44 n.20. Nothing like that is occurring here. Plaintiffs have no answer to the wall of authority showing New York courts routinely approve class-action waivers and contracts like this one. Marriott Br. 34-37.

## III. Certification Violates Rule 23's Ascertainability Requirement.

Certification is independently foreclosed because plaintiffs' classes are not ascertainable. Plaintiffs do not dispute the district court's correct holding

that any putative class member who was fully reimbursed for their stays lacks standing based on a payment-related injury. *See* Appellees' Br. 49-50 (citing JA1236). And their brief confirms that there is no administratively feasible way to determine, across millions of potential class members, who was reimbursed and who was not. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

## A. Marriott's Database Does Not Contain The Information Required To Ascertain The Class.

Plaintiffs primarily argue for ascertainability by mischaracterizing what the available data show. Marriott's database shows who booked a room; it does not "do[] most of the heavy lifting" to reveal who bore the ultimate economic burden—it reveals nothing about that. Appellees' Br. 55-56. That is fatal because, as discovery revealed, nearly 90% of named plaintiffs' stays were reimbursed, and approximately 30% had *all* their stays reimbursed so lack standing. *See* Dkt. 885, Exs. 40-54; JA1345.

Plaintiffs next argue against a strawman: "[T]he need to review individual files to identify [class] members" does not *per se* preclude certification. Appellees' Br. 56-57. But the problem here is that *no* "individual files" can solve class membership. Proving a negative—*non-* reimbursement at any time, by anyone, in any form—cannot be answered

with reference to *any* closed universe of documents; only a complete and total audit of every bank account, credit card, cash transaction, or digital payment that each putative class member ever had during and since the multiyear class period can answer that. "[T]hese complications pose a significant administrative barrier to ascertaining the ownership classes." *EQT*, 764 F.3d at 359. And that means no class can be certified.

## B. Affidavits Cannot Overcome A Lack Of Objective Proof Regarding Non-Reimbursement.

Effectively conceding that documentary evidence cannot prove class membership, plaintiffs insist affidavits can do the trick. But that proposal contravenes countless cases—particularly where, as here, defendants challenge the validity of the affidavits. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52-53 (1st Cir. 2018) ("Our inability to fairly presume that these plaintiffs can rely on unrebutted testimony in affidavits to prove injury-in-fact is fatal to plaintiffs' motion to certify this case."); *Kahru v. Vital Pharms., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) (similar); *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089-91 (N.D. Cal. 2011) (similar); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 301-02 (S.D. Ala. 2006) (similar).

Plaintiffs' supposedly contrary cases do not move the needle. They employed affidavits for a limited purpose: to corroborate documentary proof.

*See, e.g.*, *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 480 (3d Cir. 2020) (allowing affidavits where "multiple sets of evidence" could "be matched with and verified by the putative class members' affidavits," such as pay stubs, driver logs, etc., and the affidavits explained the relationship between the documents to claimed overtime pay). It is one thing for an affidavit to explain the context of documents; it is another for the affidavit to supply the evidence of injury that no documentary evidence can prove.

Plaintiffs say no problem because "concerns about fraudulent affidavits are minimized where the recovery at issue 'is so small that it is unlikely to induce fraudulent claims.'" Appellees' Br. 57 (quoting JA1241). But the record proves the fundamental unreliability of affidavits here. In depositions, plaintiffs were frequently unable to recall whether stays had been reimbursed. *See* Marriott Br. 47. Asking millions of people to attest to the non-reimbursement of millions of hotel stays from years ago will lead to an enormous number of erroneous affidavits, and thus an enormous number of uninjured class members. Plaintiffs, once more, have no answer.

Plaintiffs' tuition-refund cases are not to the contrary. As plaintiffs acknowledge, authority is split on whether classes in these suits are ascertainable, *see* Appellees' Br. 59 & n.30—but they omit that the split

aligns with the rule Marriott advocates. Classes are not "administratively feasible" where the university's records do not show "whether [students] themselves paid their tuition and/or fees." *E.g.*, *Evans v. Brigham Young Univ.*, 2022 WL 596862, at *4 (D. Utah Feb. 28, 2022), *aff'd*, 2023 WL 3262012 (10th Cir. May 5, 2023); *see also Garcia De Leon v. N.Y. Univ.*, 2022 WL 2237452, at *4 (S.D.N.Y. June 22, 2022) (declining to certify because "NYU cannot readily ascertain *who* paid which fees and in what amounts … because students often look to family members, and even in some cases to employers, to pay money due to NYU on their behalf"). By contrast, in *Schultz v. Emory University*, the case on which plaintiffs rely, the court found the class ascertainable only because the school's records *did* reveal who ultimately bore the economic burden. 2023 WL 4030184, at *3 (N.D. Ga. June 15, 2023). Moreover, the Eleventh Circuit maintains a more lenient ascertainability standard than this Court, and the *Emory* court acknowledged the class would fail a more rigorous test. *See id.* As these cases illustrate, the question is whether documentary proof can show who paid—so belongs in the class— and plaintiffs do not dispute they have none.

## C.    Reimbursement Goes To Standing, So Must Be Proven At Trial.

These ascertainability issues are heightened because injury must be proven at trial for each of the millions of class members. Plaintiffs cannot wish away the Supreme Court's instruction that "the specific facts set forth by the plaintiff to support standing must be supported adequately by the *evidence adduced at trial.*" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). Here, class membership turns on an individualized standing inquiry; thus, both must be determined at trial. Plaintiffs' attempts to evade this requirement fail.

First, plaintiffs recite that "the presence of a small number of uninjured absent class members is insufficient to defeat class certification." Appellees' Br. 48. But discovery revealed that approximately 30% of named plaintiffs did not bear the economic burden for *any* of their stays, so lack standing and cannot be class members. Extrapolating across the class, there are millions more than a "small number" of uninjured plaintiffs.[4]

---

[4] Plaintiffs assert that failure to certify these classes based on overpayment injury would "shield [Marriott] from ever being sued on a class basis for recovery of hotel room payments." Appellees' Br. 60. Not so. Were plaintiffs to demonstrate another injury occurred, standing would not necessarily preclude certification. As for overpayment, there are "other tools available

Second, plaintiffs suggest they need not prove non-reimbursement because they can rely on the risk of identity theft or the supposed breach of the parties' contract for standing. But "plaintiffs must demonstrate standing for each claim that they press"; they cannot mix and match. *TransUnion*, 594 U.S. at 431. What's more, regarding risk of identity theft, discovery failed to substantiate such allegations classwide, so plaintiffs did not pursue this theory at certification.

As for standing from contract breach alone, a breach absent any ensuing injury does not confer standing. *See, e.g.*, *Dinerstein v. Google, LLC*, 73 F.4th 502, 519 (7th Cir. 2023). Plaintiffs' cases involved contract breaches that caused actual injury. *See L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x 284, 289 (4th Cir. 2016) (breach caused six-figure damages); *Cernelle v. Graminex, L.L.C.*, 2022 WL 2759867, at *5 (6th Cir. July 14, 2022) (same). Thus, every time this Court has found standing for data-breach plaintiffs, standing has been based on actual identify theft stemming from the breach. *See, e.g.*, *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613,

---

to address the problem of … high-volume claims that pose individual issues" of fact, such as regulatory enforcement, state attorney general suits, and private lawyers "marshal[ing] the threats of res judicata and fee shifting to induce aggregate settlements." *Asacol*, 907 F.3d at 56.

621-22 (4th Cir. 2018). This Circuit's insistence that data-breach plaintiffs show actual data theft confirms that standing requires actual injury, beyond an alleged breach of a privacy agreement or similar contract. *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017); *see, e.g., Kimbrel v. ABB, Inc.*, 2019 WL 4861168 (E.D.N.C. Oct. 1, 2019); *Darnell v. Wyndham Cap. Mortg., Inc.*, 2021 WL 1124792 (W.D.N.C. Mar. 24, 2021); *Betz v. St. Joseph's/Candler Health Sys., Inc.*, 630 F.Supp.3d 734 (D.S.C. 2022).[5]

Nor do nominal damages establish injury. *Doe v. Chao*, 306 F.3d 170, 181 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004). Plaintiffs cite *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). Appellees' Br. 49. But that case involved an undisputed First Amendment injury, so addressed "only redressability" for retrospective relief where the claim for injunctive relief had been mooted by voluntary cessation. 141 S. Ct. at 802. *Uzuegbunam* does not excuse plaintiffs from proving injury-in-fact to gain "entry to court." *Id.* "It remains

---

[5] Plaintiffs half-heartedly suggest that this Court should dismiss the appeal in light of Marriott's March 26, 2024 disclosure concerning the type of cryptography used to protect customer information in the Starwood reservation database. Appellees' Br. 28 n.12; *see* Dkt. 1181-4. But that disclosure has nothing to do with the propriety of class certification, nor does it establish identity theft sufficient to establish standing. Plaintiffs have had years to prove identity theft resulted from this incident, to no avail.

for the plaintiff to establish the other elements of standing (such as a particularized injury)." *Id.*

Finally, even were breach without injury sufficient for standing, that still would not establish standing for plaintiffs' tort or statutory claims. *See supra* 24. As such, Marriott would have a right to challenge the affidavits of each class member at trial to ensure standing for all non-contract claims, leaving the fundamental ascertainability problem unresolved. *See Asacol*, 907 F.3d at 51-52 (denying certification where affidavits would be crucial to establishing injury-in-fact because doing so would require individual testimony at trial or violation of defendants' due process rights to cross-examination). Plaintiffs cannot establish ascertainability.

## IV. Certification Violates *Comcast.*

Reversal is also warranted because plaintiffs have not satisfied Rule 23(b)'s predominance requirement as articulated in *Comcast*—namely, that plaintiffs prove that their "model … establish[es] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013).

## A.  To Satisfy Rule 23, Plaintiffs Must Prove That Their Model Is Capable Of Measuring Damages On A Classwide Basis.

1. Plaintiffs' primary response attacks yet another strawman. They argue that "the law across the Circuits" is that a class can satisfy the predominance requirement under *Comcast* even if the damages model requires "some individualized[] inquiry." Appellees' Br. 75. The problem with plaintiffs' model is not that it requires "some individualized inquiry," but that it is *incapable* of calculating class damages, let alone in a manner in which common issues predominate.

Plaintiffs are caught between a rock and a hard place. Without his co-movement assumption, Dr. Prince would need to run millions of calculations using millions of pieces of data he does not have and cannot get. Dr. Prince originally proposed doing so, and the district court rightly noted that would require an "enormous number of calculations." JA1205, JA2907; *see* JA2366-JA2368 (Dr. Prince conceding same at deposition). Damages would be so individualized that "[q]uestions of individual damage calculations" would "overwhelm questions common to the class." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 237 (4th Cir. 2021).

That leaves Dr. Prince to rely on his co-movement assumption. But if that critical assumption is invalid, then common issues do not predominate,

and Rule 23 cannot be satisfied. To take a simple example, Dr. Prince assumed that because a Starwood hotel room in San Francisco was more expensive than a particular competitor Hilton hotel room on a given day, it would always be more expensive, no matter the day, room type, rate package, or any other variable. If that assumption were wrong, Dr. Prince's model would be unable to calculate overpayment for the Starwood because any overpayment depends on the "historical prices" for "the Marriott hotel and hotels surrounding it." Appellees' Br. 79. Nor is it possible to supplement the model with individualized calculations to derive the "true" overpayment, because *that* would require the *actual* "historical prices" for every stay—the precise data Dr. Prince does not have and cannot get. In short, if co-movement is invalid, common issues cannot predominate because Dr. Prince's overpayment calculations require millions of inputs and runs that are not just impracticable but impossible.

2. Plaintiffs attempt to defend Dr. Prince's co-movement assumption (unsuccessfully, *see infra* 30-32), but plaintiffs primarily contend that this Court cannot find a Rule 23(b) predominance problem even if the critical co-movement assumption is false. Plaintiffs claim that the validity of the assumption is a "merits" question so is irrelevant at class certification.

Appellees' Br. 79. Plaintiffs alternatively suggest that the assumption *could* be raised in a *Daubert* challenge, but Marriott has not "preserved" the argument on appeal. Appellees' Br. 74. Both assertions are false.

*Comcast* is clear that plaintiffs cannot shield from review a lack of predominance by calling it a "merits" issue. The Supreme Court explained that, "[b]y refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the [Third Circuit] ran afoul of our precedents requiring precisely that inquiry." *Comcast*, 569 U.S. at 34. The north star of predominance is whether individualized issues outweigh common ones. If plaintiffs cannot prove their damages model facilitates common issues to predominate, they are not entitled to certification regardless of whether those issues also go to the merits of plaintiffs' claims. *Id.* Were it otherwise, plaintiffs could obtain class certification by proffering *any* method of calculating damages across the class, regardless of how arbitrary—say, setting damages equal to a class member's age. That would make a paper tiger of the predominance requirement that *Comcast* emphasized must be satisfied before certification.

Plaintiffs also misunderstand the relationship between Rule 23 and *Daubert*. Rule 23 imposes an independent obligation on plaintiffs to prove—and the court to find—that common issues predominate regarding damages before certifying. In so doing, "a court must examine whether any statistical assumptions made in [the damages model] are reasonable." *Brown v. Nucor Corp.*, 785 F.3d 895, 904 (4th Cir. 2015). This Court is entitled to review the district court's *Daubert* analysis in assessing whether plaintiffs have met their Rule 23 burden. *See Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 110-11 (4th Cir. 2013). But the key point is that *Daubert* goes only to the admissibility of Dr. Prince's testimony at trial, whereas Rule 23 requires proof that common issues do, in fact, predominate such that class certification's requirements are satisfied.

## B. Plaintiffs Cannot Salvage Their Overpayment Assumption.

Plaintiffs have not carried their burden, so certification is improper. Plaintiffs chiefly tout the validity of *other* aspects of Dr. Prince's work. *See* Appellees' Br. 77-79. But Marriott does not here dispute those aspects—such as the soundness of "conjoint" methodology. The question before this Court is whether plaintiffs have established that co-movement is a "reasonable"

assumption. *Nucor Corp.*, 785 F.3d at 904. When it comes to co-movement, plaintiffs have little to say.

Plaintiffs do not (and cannot) dispute that Dr. Prince did not test co-movement. Or that the sole article Dr. Prince cited did not establish co-movement for the hotels at issue in this case. Or that Dr. Prince lacked any other basis for assuming co-movement. Instead, plaintiffs say Marriott's expert did not disprove co-movement. Appellees' Br. 81-82. But she did. Plaintiffs acknowledge that co-movement means that "when one hotel's prices go up, other hotels' price[s] tend to also go up." Appellees' Br. 80 (quoting JA2927). Marriott's expert showed that hotel prices in the markets at issue did *not* move in the same direction—some went up, others went down. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ The flaw in Dr. Prince's untested and disproven co-movement assumption is that simple.

This case, then, fits the D.C. Circuit's analysis in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, hand in glove. 725 F.3d 244, 253 (D.C. Cir. 2013). As plaintiffs acknowledge, that case applies *Comcast* to hold that a damages methodology yielding "false positives" does not satisfy predominance. Dr. Prince's model suffers from the same malady. Because his model cannot determine who, if anyone, overpaid for which stays, it reports overpayments that do not exist. JA3089 ███████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ As in *In re Rail Freight*, the district court's certification order should be reversed.[6]

## CONCLUSION

For the foregoing reasons, the class certification order should be reversed.

---

[6] Marriott joins Accenture's reply, including regarding issue classes.

Dated: May 9, 2024

Respectfully submitted,

/s/ Matthew S. Hellman

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
Emanuel Powell III
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,477 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in 14-point Century Expanded LT Standard font.

Dated: May 9, 2024                                 /s/ Matthew S. Hellman

# CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2024, I electronically filed public and sealed versions of the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. I further certify that all parties to this case are registered CM/ECF users and that service of the public brief will be accomplished by the CM/ECF system.

I also certify that on May 9, 2024, I electronically served the sealed brief upon the following counsel via email:

Craig S. Primis, P.C.
Devin S. Anderson
Emily M. Long
Joseph C. Schroeder
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
craig.primis@kirkland.com
devin.anderson@kirkland.com
emily.long@kirkland.com

James J. Pizzirusso
HAUSFELD LLP
888 16th Street, NW
Suite 300
Washington, DC 20006
jpizzirusso@hausfeldllp.com

Robert H. Klonoff
ROBERT H. KLONOFF, LLC
2425 SW 76th Avenue
Portland, OR 97225
klonoff@usa.net

Samuel Issacharoff
40 Washington Square South
New York, NY 10023
si13@nyu.edu

Amy E. Keller
DICELLO LEVITT LLP
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
akeller@dicellolevitt.com

Steven M. Nathan
HAUSFELD LLP
33 Whitehall Street
14th Floor
New York, NY 10004
snathan@hausfeld.com

Jason L. Lichtman
Sean A. Petterson
LIEFF CABRASER HEIMANN
 & BERNSTEIN LLP
250 Hudson Street
8th Floor
New York, NY 10013
jlichtman@lchb.com
spetterson@lchb.com

Justin J. Hawal
DICELLO LEVITT LLP
8160 Norton Parkway
Mentor, OH 44060
jhawal@dicellolevitt.com

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Avenue, NW
Suite 500
Washington, DC 20005
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

Claire L. Torchiana
COHEN MILSTEIN SELLERS
 & TOLL PLLC
88 Pine Street
14th Floor
New York, NY 10005
ctorchiana@cohenmilstein.com

Dated: May 9, 2024

*/s/ Matthew S. Hellman*