# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

————————

PETER MALDINI ET AL,

V.

MARRIOTT INTERNATIONAL, INCORPORATED

————————

PETER MALDINI ET AL.,

V.

ACCENTURE LLP,

————————

On Appeal from the United States District Court
for the District of Maryland

————————

## REPLY BRIEF OF DEFENDANT-APPELLANT
## ACCENTURE LLP

————————

CRAIG S. PRIMIS, P.C.
DEVIN S. ANDERSON
EMILY M. LONG
JOSEPH C. SCHROEDER
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
devin.anderson@kirkland.com

*Counsel for Defendant-Appellant
Accenture LLP*

May 9, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Local Rule 26.1(a), Accenture LLP certifies that it is not a publicly held corporation.  Accenture LLP is a subsidiary of Accenture plc, Accenture Inc., Accenture LLC, Accenture Sub LLC, Accenture Sub II Inc., Accenture Sub III Inc., and Accenture Sub IV Inc.  Accenture plc, Accenture Inc., Accenture LLC, and Accenture Sub LLC are publicly held corporations that own 10% or more of Accenture LLP's stock.

# TABLE OF CONTENTS

INTRODUCTION .......................................................................... 1

ARGUMENT .............................................................................. 2

I.  The District Court Erred By Certifying Classes That Lack A
    Common Injury ................................................................... 2

    A.    The District Court Erred By Certifying Classes That Violate
    Rule 23's Requirement That The Class Have A Common,
    Class-Wide Injury ............................................................. 2

    B.    The District Court's Order Establishes A Procedure That
    Violates Article III ........................................................... 8

II. The District Court's Use Of Rule 23(c)(4) Was Improper ............. 15

III. The District Court's Rule 23(c)(4) Classes Independently Violate
    The Superiority Requirement of Rule 23(b) ........................... 19

CONCLUSION ......................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................. 8, 17

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper &*
*Kahl, LLP,*
451 Md. 600 (2017) ..................................................................... 22

*Beck v. McDonald,*
848 F.3d 262 (4th Cir. 2017) ....................................................... 6

*Carolina Youth Action Project v. Wilson,*
60 F.4th 770 (4th Cir. 2023) ...................................................... 10

*Chisolm v. TranSouth Fin. Corp.,*
194 F.R.D. 538 (E.D. Va. 2000) ................................................ 23

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ...................................................................... 3, 4

*Constantine v. Rectors & Visitors of George Mason Univ.,*
411 F.3d 474 (4th Cir. 2005) ..................................................... 9, 10

*Cordoba v. DIRECTV, LLC,*
942 F.3d 1259 (11th Cir. 2019) .................................................. 12

*DeVillegas v. Quality Roofing, Inc.,*
1993 WL 515671 (Conn. Super. Ct. Nov. 30, 1993) .................. 22

*Ealy v. Pinkerton Gov't Servs., Inc.,*
514 F. App'x 299 (4th Cir. 2013) (per curiam) ........................... 2

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,*
254 F.R.D. 68 (E.D.N.C. 2008) .................................................. 19

*Gates v. Rohm & Haas Co.,*
655 F.3d 255 (3d Cir. 2011) ....................................................... 19

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.,*
  241 F.R.D. 305 (S.D. Ill. 2007)............................................................... 22

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003).................................................. 3, 8, 15, 16

*Harris v. Med. Transp. Mgmt., Inc.,*
  77 F.4th 746 (D.C. Cir. 2023),
  *cert. denied,* 144 S. Ct. 818 (2024)....................................................... 18

*Holland v. Big River Mins. Corp.,*
  181 F.3d 597 (4th Cir. 1999)..................................................................... 7

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.,*
  892 F.3d 613 (4th Cir. 2018)..................................................................... 6

*Int'l Brotherhood of Teamsters v. United States,*
  431 U.S. 324 (1977).................................................................................. 14

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).................................................................................. 11

*In re Marriott Int'l, Inc.,*
  78 F.4th 677 (4th Cir. 2023) ................................... 5, 7, 18, 19, 20, 21

*O'Leary v. TrustedID, Inc.,*
  60 F.4th 240 (4th Cir. 2023) ..................................................................... 6

*Parker v. Asbestos Processing, LLC,*
  2015 WL 127930 (D.S.C. Jan. 8, 2015) .............................................. 19

*In re Rail Freight Surcharge Antitrust Lit.-MDL No. 1869,*
  725 F.3d 244 (D.C. Cir. 2013) ................................................................. 2

*In re Rhone-Poulenc Rorer, Inc.,*
  51 F.3d 1293 (7th Cir. 1995).................................................................. 23

*Russell v. Educ. Comm'n for Foreign Med. Graduates,*
  15 F.4th 259 (3d Cir. 2021)..................................................................... 21

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) ................................................................................... 4

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ................................................................. 9

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ............................................................. 8, 10

*Tank Tech, Inc. v. Valley Tank Testing, LLC,*
244 So. 3d 383 (Fla. 2d DCA 2018*)* .................................... 22

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ............................ 4, 7, 8, 10, 11, 13, 14

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) ........................................................ 13, 14

*United States v. Hays,*
515 U.S. 737 (1995) ............................................................... 11

*United States v. Horton,*
321 F.3d 476 (4th Cir. 2003) ................................................. 17

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) .......................................... 1, 2, 3, 4, 8, 17

*In re Whirlpool Corp. Front-Loading Washing Prods. Liab.*
*Litig.,*
722 F.3d 838 (6th Cir. 2013) ................................................. 23

## Constitutional Provisions

U.S. Const, art. III ............................ 1, 2, 3, 4, 8, 10, 11, 13, 14, 15, 17, 18

U.S. Const. art. III, § 2 ............................................................. 4

## Rules

Fed. R. Civ. P. 23 ............................ 1, 2, 3, 4, 5, 6, 8, 13, 14, 15, 17, 18, 19

Fed R. Civ. P. 23(a) ................................................................... 2

Fed. R. Civ. P. 23(b) ............................................................ 2, 17

Fed. R. Civ. P 23(b)(3) ....................................................... 19, 24

Fed. R. Civ. P. 23(c)(4)............................... 1, 2, 8, 15, 16, 17, 18, 19, 23, 25

Fed. R. Civ. P. 36 ................................................................. 22

Fed. R. Civ. P. 702 ................................................................ 5

**Other Authorities**

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d. ed.) .............. 21

# INTRODUCTION

Plaintiffs' brief confirms that no class action should have been certified against Accenture. Whatever else Rule 23(c)(4) might mean, it does not permit a district court to find that injury and causation cannot be established by common proof—and then to certify a class action anyway. By eliminating considerations of injury and causation from any class adjudication, the district court's issue-class proceeding guarantees intractable Rule 23 and Article III problems, which went unaddressed after this Court's remand. Instead of engaging with Accenture's arguments, plaintiffs offer straw men, conflating pleading-stage burdens with class-certification standards, Rule 23 with Article III, and misconstruing the district court's rulings and their own motion for class certification.

That plaintiffs have little to say in defense of the certification order is unsurprising, as there is nothing to defend about a class proceeding (a) where class members do not share a common injury and (b) that is therefore incapable of adjudicating the class's standing. A common harm uniting the members of the class is the most basic of prerequisites for a class action. *See, e.g., Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 349-50 (2011). Whether looked at through the lens of Rule 23 commonality, predominance, or superiority—or Article III—there is nothing to recommend a class action under these circumstances.

## ARGUMENT

## I. The District Court Erred By Certifying Classes That Lack A Common Injury

### A. The District Court Erred By Certifying Classes That Violate Rule 23's Requirement That The Class Have A Common, Class-Wide Injury

Plaintiffs do not engage with the fundamental Rule 23 problem that arose when the district court certified a class that lacked a common injury capable of class-wide adjudication.[1] Both Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement demand that "the plaintiff … demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 350; *see also, e.g.*, *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013) (per curiam); *In re Rail Freight Surcharge Antitrust Lit.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013). Rule 23(c)(4) "issue" classes

---

[1] As in the opening brief, references from here on to "the district court" generally refer to Judge Grimm's original rulings, which were reinstated without analysis by Judge Bailey.

are no exception, as those classes also must satisfy commonality and predominance. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003). There can be no class action without a viable class-wide theory of common injury.

Plaintiffs entirely ignore this dispositive Rule 23 principle. They do not even cite *Wal-Mart*. Instead, plaintiffs miscast the lack-of-common-injury issue as pertaining only to Article III standing and governed by rulings at the motion-to-dismiss stage of this case. Response.Br.46-53. That is doubly wrong. *Rule 23* requires plaintiffs seeking class treatment to prove—not plead—that they have a viable theory of common injury that can reliably be applied class-wide. That is the lesson of *Wal-Mart* and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). In *Wal-Mart*, the plaintiffs failed to identify a harm that would "depend upon a common contention" and was "capable of classwide resolution," which meant the putative class failed commonality. 564 U.S. at 350. In *Comcast*, the plaintiffs put forward a theory of common harm but lacked a mechanism for measuring that particular harm on a class-wide basis, and so that the class failed predominance. 569 U.S. at 31, 35-37. Although the common-injury requirement surely has roots in

Article III principles, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 442 (2021); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974), it is an independent Rule 23 requirement and must be proven.

It is therefore of no moment that the district court found that the named plaintiffs had sufficiently pleaded standing in their complaint. Response.Br.47, 50, 52-53 (relying on district court's motion-to-dismiss ruling). Rule 23 is no "mere pleading standard." *Wal-Mart*, 564 U.S. at 350; *Comcast*, 569 U.S. at 33. It demands a "rigorous analysis" that "probe[s] behind the pleadings" into whether plaintiffs have "affirmatively demonstrate[d]" their "compliance with the Rule." *Wal-Mart*, 564 U.S. at 350.

Plaintiffs' efforts to show a common injury capable of class-wide adjudication did not survive that Rule 23 scrutiny as to Accenture. Although plaintiffs' complaint had focused largely on the named plaintiffs' alleged identity-theft-related injuries, plaintiffs changed horses when it came time for class certification. Plaintiffs' class motion advanced two—and only two—"classwide theories of harm." JA1257, 1419-20. The first was plaintiffs' theory that Marriott overcharged

plaintiffs for their hotel rooms. The district court upheld that theory under Rule 23 and Rule 702, and certified a class against Marriott on that basis. JA1257; *but see* Marriott.Br.40-49. Importantly, everybody recognized that this theory did not apply to Accenture, which was Marriott's IT provider and had no interaction with plaintiffs. JA1257.

Theory number two was, as the district court put it, that "Starwood customers' PII had market value" and "that putative class members lost that value when hackers gained access to, and/or exported, PII from the NDS database." JA1257. This "lost market value" theory was the only theory of common, class-wide injury against Accenture. JA1257-58. And it crashed and burned. The district court rejected both the theory and the model plaintiffs put forward to measure it, finding that the model could "[]not support class certification … even as to liability," and, without it, "too many open questions remain as to individualization," including "fact of injury, injury causation, etc." JA1258. Plaintiffs have not cross-appealed that determination by the district court, which, as of now, leaves "plaintiffs with no classwide theory of injury or measure of damages" as to Accenture. *In re Marriott Int'l, Inc.*, 78 F.4th 677, 684 (4th Cir. 2023).

That ruling should have ended the analysis. Supreme Court precedent dictated that no class could be certified against Accenture, given those findings.

This Court can easily disregard plaintiffs' argument that the "district court correctly determined that the targeted theft of class members' personal data put them at imminent risk of identity theft" and that "multiple class members have already suffered identity theft and fraud." Response.Br.50-53 & n.22. Plaintiffs are citing the district court's *motion-to-dismiss ruling* concerning the *individual bellwether plaintiffs*. That ruling does not govern the Rule 23 question.

After more than a year of fact and expert discovery and when it came time to put forward their class motion, plaintiffs did not ask to certify a class based on class-wide identity theft. That was a wise decision, as the theory faced both evidentiary and legal problems. For one, there was no actual evidence of misuse attributable to the Marriott incident, Accenture.Br.21, and simply pointing to the fact of a data breach is insufficient to establish an injury. *See Beck v. McDonald*, 848 F.3d 262, 274-275 (4th Cir. 2017); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018); *O'Leary v.*

*TrustedID, Inc.*, 60 F.4th 240, 244 (4th Cir. 2023). For another, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436. The district court itself recognized that "identity fraud and related mitigation theories of harm" had "individualized issues related to causation" that were "quite significant" and would preclude a finding of predominance. JA1288; JA1274.n.49; JA1285; *see also In re Marriott Int'l*, 78 F.4th at 684.

But the point for present purposes is that plaintiffs did not ask the district court to certify a class based on the theory that the class was "at imminent risk of identity theft" or had "suffered identity theft and fraud." Response.Br.50. They cannot be heard to argue that theory as a basis of class-wide harm now. *See, e.g.*, *Holland v. Big River Mins. Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[I]ssues that were not raised in the district court will not be addressed on appeal").[2]

_____

[2] For similar reasons, plaintiffs' attempt to analogize their complaint's allegations to the "1,853 class members in *TransUnion* who were found to have standing" is meaningless. Response.Br.50-51. Plaintiffs did not move to certify a class based on a dissemination theory, either.

The district court's uncontested finding that plaintiffs lacked a common injury susceptible to class-wide proof requires reversal of the Rule 23(c)(4) issue classes. As the Supreme Court has long said, common injury is a necessary condition for class certification. *Wal-Mart*, 564 U.S. at 350; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Rule 23(c)(4) does nothing to change that requirement. *Gunnells*, 348 F.3d at 441. No class-wide injury means no class action against Accenture.[3]

## B. The District Court's Order Establishes A Procedure That Violates Article III

Having misconstrued the Rule 23 issue, plaintiffs further miss the mark on the Article III problems that flow from the district court's decision to certify a class that lacks a common injury susceptible to class-wide proof. The fundamentals are not in dispute. Federal courts do not "adjudicate hypothetical or abstract disputes" or "issue advisory opinions." *TransUnion*, 594 U.S. at 423-24. Standing is a matter of

---

[3] Plaintiffs also argue that a common harm arose "based on Marriott's breach of its contractual obligation," citing their overpayment theory. Response.Br.49-50. This argument is inapplicable to Accenture, since plaintiffs have no contractual claims against Accenture and did not seek certification of an overpayment injury against Accenture. JA1253-55,1259.n.32.

subject-matter jurisdiction that must be established *before* a court makes a merits adjudication. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "Thus, a federal court necessarily acts *ultra vires* when it considers the merits of a case over which it lacks subject-matter jurisdiction." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). And there are no class-action exceptions to standing requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).

The district court's unusual issue classes are at war with these principles. As the district court acknowledged, "important issues" relating to the "fact of injury" as well as "causation … *will not be resolved* during issue-class adjudication." JA1291 (emphasis added). Whether *anybody* experienced an injury traceable to Accenture will instead be determined—if at all—only in non-class, individual proceedings for those who wish to pursue their claims. Thus, the district court will purport to adjudicate the merits of the class's claims, even though it will not inquire as to whether the class has an injury in fact. That is ultra vires and unconstitutional. *Constantine*, 411 F.3d at 480.

Plaintiffs do not meaningfully engage with this argument. They choose to engage a different argument—one that Accenture is not making. Plaintiffs argue that whether "every class member must demonstrate standing *before* a court certifies a class" is an issue the Supreme Court has declined to resolve and this Court has resolved in the negative. Response.Br.46-47; *see TransUnion*, 594 U.S. at 431 n.4; *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023). The district court likewise concluded that Article III requires only that the named plaintiffs demonstrate standing at class certification. JA1231-32.

But as Accenture's opening brief made clear, Accenture is not arguing that plaintiffs must prove that all (or most) class members have standing before a class is certified. Accenture.Br.28-29. The problem here is different and more fundamental: class members' standing must be able to be tested (at summary judgment or at trial) at some point before adjudicating the merits. After all, it is black-letter law that the court must assure itself of subject-matter jurisdiction before making that sort of binding merits determination. *See, e.g.*, *Steel Co.*, 523 U.S. at 101; *Constantine*, 411 F.3d at 480. But that is effectively what the

district court said it will not do when it excluded any consideration of injury or causation from the class proceedings. The district court purports to adjudicate whether Accenture breached a duty it owed to the class, without ever testing whether the class it purports to bind has standing. That procedure is unlawful.

Whether standing was successfully *pleaded* by the class representatives is, again, not the relevant question. Response.Br.45. Standing is not determined once and for all at the pleading stage. It must be proven "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also United States v. Hays*, 515 U.S. 737, 745 (1995). At summary judgment, for example, "the plaintiff can no longer rest on … mere allegations, but must set forth by affidavit or other evidence specific facts" supporting standing, and at trial, "those facts (if controverted) must be supported adequately by the evidence." *Lujan*, 504 U.S. at 561; *see also TransUnion*, 594 U.S. at 431.

To the extent plaintiffs' use of emphasis on *TransUnion*'s statement that "[e]very class member must have Article III standing in order *to recover individual damages*," is to suggest that standing

matters only when awarding damages, that too misses the point. Response.Br.46 (quoting *TransUnion*, 594 U.S. at 431). The fatal structural flaw with the certification order here is that the district court is purporting to (1) make binding merits determinations (either at summary judgment or at trial) for every member of the class; (2) in a proceeding where the court has already said it will not—indeed, cannot—determine whether that class was injured and whether any class injury was caused by Accenture. JA1258. *Cf. Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) ("The essential point … is that at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief.").

Playing out the district court's process crystallizes the problem. At the issue-class trial (or at summary judgment), the class cannot prove and Accenture cannot contest whether the class experienced an injury-in-fact traceable to the Marriott incident. The jury will determine (or the district judge will rule) whether a duty was breached. Regardless of who that determination favors, millions upon millions of

individuals will be bound by it without ever having established that they had standing.

This problem does not arise in the normal-course class action that complies with Rule 23's common-injury requirement. If the class has put forward a theory of common injury and a mechanism for proving it on a class-wide basis, then the injury and causation questions are necessarily capable of adjudication for the class, and the district court has the opportunity to assure itself that the class members have standing before making any determination.[4] That will not and cannot happen here, and plaintiffs nowhere engage with this overarching structural flaw in the district court's certification order.

Citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), plaintiffs attack another straw man when they argue that, "under well-settled law, the presence of a small number of uninjured absent class members is insufficient to defeat class certification." Response.Br.48.

---

[4] There are certainly complex and nagging questions concerning the overlap between the Article III requirements of injury-in-fact and traceability and the merits elements of injury and causation for tort claims. *E.g.*, *TransUnion*, 594 U.S. at 427 ("an injury in law is not an injury in fact"). The Court need not delve into those issues, however, because the district court categorically excluded *any* considerations of injury and causation from the class proceeding.

But the central issue here is not whether a class can be certified if it turns out that some number of the certified class did not actually experience the purported common injury. *See Tyson Foods*, 577 U.S. at 460-61. It is whether a district court can carve injury and causation out of a class proceeding altogether when those are the very issues that overlap with whether the class has standing. Notably, the class proceeding in *Tyson Foods* was capable of adjudicating and did adjudicate injury and causation as to the class. *See id.* at 451.[5]

At bottom, these classes will inevitably violate the Constitution. The class proceedings will purport to decide merits issues for all class members without ever deciding whether they have standing to bring claims against Accenture. No matter which side wins, the district court will have issued an advisory opinion in violation of Article III. *See TransUnion*, 594 U.S. at 424. This Court should reverse.

---

[5] *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), is also not on point. *Teamsters* was not a consumer class action brought under Rule 23 but rather a case brought by the United States government to enforce Title VII on behalf of individuals. *Id.* at 328-29. Moreover, the Supreme Court held that the government had proved a class-wide injury (a pattern or practice of discrimination), and the trial focused on whether an individual had experienced that class-wide injury. *Id.* at 361-62, 368.

## II. The District Court's Use Of Rule 23(c)(4) Was Improper

With no meaningful response to the serious Rule 23 and Article III problems here, plaintiffs focus on advocating for a "broad view" of Rule 23(c)(4) that would allow for certification of individual elements of a cause of action. Response.Br.63-66. As a threshold matter, the Court can reverse the district court's certification order based solely on the fundamental Rule 23 and Article III problems with certifying a class despite a finding that the class does not have a common injury capable of class-wide adjudication. The Court need not resolve whether certifying individual elements of a class action is theoretically permissible under Rule 23(c)(4).

Nevertheless, the most sensible reading of subsection (c)(4) aligns with the structure of Rule 23 and this Court's prior decision in *Gunnells*: the provision allows courts to certify individual causes of action within a larger lawsuit, *Gunnells*, 348 F.3d at 443; to address liability as a class while determining damages individually, *see* Fed. R. Civ. P. 23(c)(4), advisory committee note; or—at its broadest application and in light of the Rule 23 and Article III principles discussed above—to resolve common elements that include injury and causation. These

functions give Rule 23(c)(4) independent and important meaning while ensuring that this miscellaneous subsection does not swallow the rest of the Rule whole.

Plaintiffs take issue with Accenture's citation to the Advisory Committee Notes. Response.Br.68. But the Notes confirm that Rule 23(c)(4) is the mechanism to bifurcate class actions into class liability and individual damages stages: "in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." Fed. R. Civ. P. 23(c)(4), advisory committee note. This is almost certainly the way in which Rule 23(c)(4) is most widely used. And although the advisory committee's note is presented as an "example," this Court's decision in *Gunnells* identifies selecting specific causes of action for class treatment as another use of Rule 23(c)(4). 348 F.3d at 443-45.

Plaintiffs isolate the word "issue," arguing that if the drafters of Rule 23(c)(4) wanted to limit the scope of this subsection, they could have stated that it applies only to "entire claims" instead of to "issues."

Response.Br.68. But the same can be said for plaintiffs' understanding of Rule 23(c)(4): if the drafters wanted to expand the rule, they could have stated it applies to individual *elements* of claims.

The problem is that the word "issue," read in isolation, is capable of many meanings. It must therefore be read in light of its surrounding context, the structure of the Rule as a whole, and of course the Constitution. *See Wal-Mart*, 564 U.S. at 361 (rejecting interpretation of Rule 23 that is "inconsistent with the structure"); *Amchem*, 521 U.S. at 592 ("Rule 23's requirements must be interpreted in keeping with Article III constraints."); *United States v. Horton*, 321 F.3d 476, 479 (4th Cir. 2003) ("to determine the plain meaning of a statute, we must consider its language, structure, and purpose"). The issue-class provision does not appear in subsection (b), which establishes the "[t]ypes of [c]lass [a]ctions" that may proceed. Fed. R. Civ. P. 23(b). Instead, the provision appears in a miscellaneous subsection, which strongly suggests that Rule 23(c)(4) was not intended to create a revolutionary form of class action on individual elements. Indeed, this case exemplifies the Article III problems that can arise when certifying only one or two elements of a single claim. *See supra* §I.B.

Accenture acknowledges here as it did in its opening brief that several other circuits have read Rule 23(c)(4) to permit, in theory, certification of individual elements of a single claim. Accenture.Br.35-36. But many of these circuits have done so reluctantly and have expressed wariness about using Rule 23(c)(4) in a way that nullifies the predominance requirement. *See, e.g.*, *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 762 (D.C. Cir. 2023) ("the district court must explain how, within the context of the particular litigation before it, common questions predominate within a reasonable and workably segregable component of the litigation"), *cert. denied*, 144 S. Ct. 818 (2024). After all, and as this Court recognized, when a court can simply whittle a claim down to the one or two common issues, common issues will always predominate. *See In re Marriott Int'l*, 78 F.4th at 689. Indeed, a significant number of these out-of-circuit cases *reversed* certification of issue classes even after acknowledging the theoretical possibility of individual-element class actions. *See* Accenture.Br.36 n.7 (citing cases). And, importantly, none of these decisions grappled with the specific Rule 23 and Article III arguments that Accenture has raised.

The structure of Rule 23, first principles, and precedent therefore demand extreme caution in using Rule 23(c)(4) to certify individual elements of a single cause of action, and they provide no support for the way the district court did so here.

## III. The District Court's Rule 23(c)(4) Classes Independently Violate The Superiority Requirement of Rule 23(b)

In all events, the issue classes are not "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3). As this Court recognized last time around, Rule 23(b)(3)'s superiority requirement is especially searching for issue classes like these, as the act of "cleav[ing] off individualized questions" diminishes any theoretical efficiency gains from class proceedings. *In re Marriott Int'l*, 78 F.4th at 689. In fact, "the superiority component of Rule 23(b)(3) frequently comes into play to defeat issue certification." *Id.* A key superiority question is whether the issue classes certified here "materially advance the litigation," *Parker v. Asbestos Processing, LLC*, 2015 WL 127930, at *16 (D.S.C. Jan. 8, 2015), such that there is not a "multiplicity of individual issues" after the conclusion of the class process, *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 78 n.11 (E.D.N.C. 2008). *See also Gates v. Rohm & Haas Co.*,

655 F.3d 255, 269 (3d Cir. 2011) (similar). As this Court put it last time, the "efficiency gains of certification … must be evaluated in light of the need for individualized proceedings at the back end." *In re Marriott Int'l*, 78 F.4th at 684. Plaintiffs offer no defense of the district court's failure to analyze this case's difficult superiority problems on remand, much less the district court's decision to reinstate the issue classes in a single sentence and without briefing.

The unresolved issues here are daunting. The issue classes would leave not just damages, but also core liability elements unresolved. Each plaintiff will have to prove that he or she was personally harmed as a result of the Marriott data breach. The district court acknowledged that doing so would require "substantial individualized inquiry" and "full-blown trial[s]." JA1288. Plaintiffs, for their part, do not claim otherwise. They assert that "one issues class trial" is still superior to no class at all, Response.Br.71, but cite no case finding superiority where "full-blown" individual trials are inevitable.

Plaintiffs' argument—that any class is still better than "trying the same issues thousands of times"—has no limiting principle. *Id.* It could be made by any class plaintiff in any case, rendering superiority a

nullity. But superiority is a real requirement that carries "special importance" in issue-class cases. *See In re Marriott Int'l*, 78 F.4th at 689. Where too many issues are left unresolved, as they would be here, issue classes fail to overcome the incentive problem and thus are not "sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d. ed.) (stating that class proceedings are preferable to no proceedings unless class proceedings "will not benefit anyone except the lawyers"). The district court's novel issue classes leave immense follow-on individual litigation and fail to meaningfully advance this litigation.

Indeed, it is not at all clear that plaintiffs are correct that the parties and the court are looking at just "one issues class trial." Response.Br.71. To the contrary, choice-of-law issues may dictate at least 50 different trials *just for the issue-class adjudication. See* Accenture.Br.46-47. Although plaintiffs attempt to argue otherwise, courts have recognized that diverging state law weighs against certification, because it complicates (and may destroy) manageability. *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259,

268, 273 n.5 (3d Cir. 2021) (raising diverging state law as a reason against certifying issue classes); *see also In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 324-25 (S.D. Ill. 2007) (same). Proceeding with an issue class may very well produce *more* trials (state-by-state issue class trials plus individual trials) than simply having those individuals with meritorious claims of actual harm pursue a claim individually. Not to mention, there may be "other methods such as Fed. R. Civ. P. 36, the submission of special verdicts, and collateral estoppel" that *could* promote efficiency and "avoid relitigating an issue in each individual case." JA1291.

Other manageability issues abound. Plaintiffs fail to address the intertwined nature of the duty, injury, and causation issues, which make the district court's class proceeding an inferior method of adjudication and raise Seventh Amendment concerns to boot. For example, in many states, courts cannot determine whether a duty exists (or its scope) without delving into the nature of the plaintiffs' harm. *See Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 610 (2017); *DeVillegas v. Quality Roofing, Inc.*, 1993 WL 515671, at *3 (Conn. Super. Ct. Nov. 30, 1993); *Tank Tech, Inc. v. Valley*

*Tank Testing, LLC*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018*).* These concerns cannot be hand-waved away. Response.Br.72. The intertwined nature of the negligence analysis ensures that different factfinders will necessarily have to make determinations about harm and causation in both trials—creating duplicative trials while also violating the Seventh Amendment. *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 552 (E.D. Va. 2000); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995).

Plaintiffs contend that the "issue classes that have gone to trial have refuted the shopworn arguments … that such proceedings will be unmanageable." Response.Br.71-2. Yet the one case plaintiffs cite involved standard-fare bifurcation of liability and damages—not issue classes that did not purport to resolve liability. *See In re Whirlpool Corp. Front-Loading Washing Prods. Liab. Litig.*, 722 F.3d 838, 859-61 (6th Cir. 2013). It may well be that Rule 23(c)(4) is working fine as a bifurcation tool, but there can be no question that serious manageability problems accrue when Rule 23(c)(4) is used in this more risky way.

Ultimately, plaintiffs hinge their superiority argument on the reduction of "totally unnecessary duplication" that results from purported overlap between the issue classes against Accenture and the Rule 23(b)(3) class the court certified against Marriott. Response.Br.67 (quoting JA1291). But this "overlap" is illusory and goes unexplained. According to the district court, the issue classes against Accenture will include evidence related to "Accenture's business relationship with Starwood and Marriott, Accenture's data security responsibilities, and Accenture's data security practices." JA1289. It is unclear why such evidence would be a relevant part of any contract or consumer-protection trial against Marriott. Plaintiffs have yet to shed any light on these supposed "overlapping facts," and therefore the problem the district court seeks to solve with its issue classes—and the only reason for finding them superior—does not exist.

In the end, the issue-class proceeding will involve a massive investment of time and resources by the court and the parties, given the complexities discussed above. That massive investment will pay no dividends, because the district court's order envisions that every single person who seeks to recover damages must participate in another

individual trial to determine the issues of harm and cause. To avoid creating more litigation rather than less, this Court should reverse the district court's certification of the Rule 23(c)(4) issue classes brought against Accenture.

## CONCLUSION

For all of these reasons, the district court's Rule 23(c)(4) issue classes should be reversed.

Respectfully submitted,

/s/ *Devin S. Anderson*
CRAIG S. PRIMIS, P.C.
DEVIN S. ANDERSON
EMILY M. LONG
JOSEPH C. SCHROEDER
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
devin.anderson@kirkland.com
*Counsel for Defendant-Appellant Accenture LLP*

May 9, 2024

**CERTIFICATE OF COMPLIANCE**

    1.  This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this brief contains 4828 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

    2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook type.

May 9, 2024

/s/ *Devin S. Anderson*
Devin S. Anderson
